# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

RENEE SMITH

    Plaintiff,

v.

JOHN E. POTTER, Postmaster General,
United States Postal Service,

    Defendant.

Case Action No.: 1:08cv390

Judge Michael R. Barrett

## ORDER

This matter is before the Court pursuant to Defendant's Motion to Dismiss Counts one, three, four, and five pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or, in the alternative that the Court grant summary judgment pursuant to Fed. R. Civ. P. 56 (Doc. 6). Plaintiff filed a response in opposition wherein she voluntarily dismisses Counts four and five (Doc. 9, 2). Defendant filed a reply brief (Doc. 10). The Court is left to decide the motions on counts one and three.

### I.    Factual Background

Plaintiff Renee Smith ("Smith") filed a complaint against Defendant United States Postal Service ("USPS") alleging that Defendant USPS violated 42 U.S.C. § 2000e *et seq* by creating a "sexually hostile work environment" (Count one), engaging in gender discrimination (Count two), and finally, by retaliating against Ms. Smith after she requested an investigation into her allegations (Count three). The Complaint also sought relief for violations of Ohio state law (Count four) and recovery of punitive damages from USPS (Count five), which Ms. Smith subsequently dismissed. (Doc. 9, 2).

Smith, a resident of Warren County, Ohio, has been employed by the Cincinnati

District Office of the United States Postal Service since August of 1994. (Compl. ¶ 1). USPS is a non-profit quasi-governmental corporation engaged in the collection and distribution of posted mail from its various offices and facilities throughout the United States, including offices and facilities located in the Cincinnati, Ohio area. (Compl. ¶ 2). Since the time of Smith's hiring she has been regarded as a hardworking, loyal, knowledgeable and effective employee. (Id. at ¶8). To that end, she was promoted to Acting Supervisor in 1996 and in 2001, she was promoted again, this time to Supervisor of the Murray Station of the Cincinnati Division of USPS. (Id. at ¶9). From 2002 to 2005 there were several openings within the Cincinnati Divisions for the position of Acting Manager, which was the next level of promotion after Supervisor. (Id. at ¶10). Being qualified for the promotion, Ms. Smith expressed interest in and applied for these positions. (Id. At ¶11). Despite her qualifications, experience, and favorable recommendations from current and former supervisors, Ms. Smith was repeatedly denied the promotion. (Id. at ¶12). Instead, these vacancies were filled by male counterparts with lesser skills, experience and less favorable work histories with USPS. (Id. at ¶13).

In early December 2005, Ms. Smith's work situation deteriorated further. On December 8, 2005, Ms. Smith was dining with a co-worker at a restaurant in Springdale, Ohio when she was approached by Jeffrey Dawson, a manager employed by the Cincinnati Division of USPS. (Id. ¶¶ 14-15). Uninvited, Mr. Dawson joined Ms. Smith and her co-worker at their table. (Id.) Although Ms. Smith knew Mr. Dawson was a manager, she had no other acquaintance or personal relationship with him. (Id. at ¶ 16). Mr. Dawson then engaged in a pattern of unwanted verbal and physical conduct toward Ms. Smith, which she found offensive. (Id. at ¶ 17). Specifically, the complaint states that the conduct

included but was not limited to the following: a) Mr. Dawson stroked Ms. Smith's leg at the calf area and asked how far up her fishnet stockings went; b) he grabbed her scarf, which she had hung, along with her coat, on the back of her seat, held it up to his nose and told her it smelled good. He added that he wanted to make sure it did not smell bad because that would tell [him] a lot; and c) he pulled her chair closer to his, situating Ms. Smith between his legs and began to bite her shoulder through her clothes. (Id). Ms. Smith, feeling uneasy and threatened, gathered her belongings and informed her co-worker that she needed to leave right away. (Id. at ¶ 18).

Upon announcing her plans to leave, Mr. Dawson asked Ms. Smith where she was going. Ms. Smith responded that she had to pick up her children at a local gym. (Id. at ¶ 19). When asked by Mr. Dawson whether she would be willing to see him after work, Ms. Smith did not respond. (Id. at ¶ 20). Ms. Smith then left the restaurant, followed by Mr. Dawson. (Id. at ¶ 21). Mr. Dawson caught up with Ms. Smith in the parking lot, where he asked her if she was running away from him. (Id. at ¶ 22). Ms. Smith responded that she had to pick her children and refused Mr. Dawson's invitation to sit with him in his car. (Id. at ¶¶ 22-23). Mr. Dawson then grabbed Ms. Smith by her waist and pulled her toward him, kissing her against her will. (Id. at ¶ 24). Ms. Smith pushed him away, went to her car and drove away. (Id.) Later that evening, Mr. Dawson sent Ms. Smith a text message that read "what are you wearing?" (Id. at ¶ 25). Ms. Smith did not respond. (Id.).

At some point during the following week, Mr. Dawson called Ms. Smith and advised her that he was about to be assigned the manager's position at the Murray Station where Ms. Smith was employed as the finance supervisor. (Id. at ¶ 26). He added that he thought Ms. Smith would really like working for him and that he could "do a lot" to help her secure

a promotion to the position of Acting Manager at the Murray Station. (Id.). Given Mr. Dawson's recent behavior toward her, Ms. Smith felt uncomfortable having to work under him and be subject to his supervision. (Id.). Ms. Smith claims that this behavior caused her to feel intimidated and thus she did not express her anxiety about the situation. (Id.).

Mr. Dawson's tenure as the Manager of the Murray Station began in late December of 2005. (Id. at ¶ 27). As manager, Mr. Dawson imposed two successive schedule changes on Ms. Smith, which adversely impacted her ability to effectively carry out her duties over the four finance units and two contract postal units. (Id. at ¶ 28). After expressing her concerns regarding the schedule changes, she was told to manage her time more effectively. (Id.). Mr. Dawson also added numerous new and unrelated duties to Ms. Smith's workload, which severely compromised her ability to carry out her main financial oversight responsibilities. (Id. at ¶ 29).

Finding that this new work environment was undercutting her chances of continued success at Murray Station, Ms. Smith asked her Area Manager for a lateral transfer to another branch that was not within the control of Mr. Dawson. (Id. ¶ 30). The Area Manager commented that Mr. Dawson had told him that he was finding reasons to discipline her in order to effectuate her removal from the USPS, adding that he was surprised because Ms. Smith had never had any disciplinary problems throughout her entire employment with USPS. (Id.). Ms. Smith was transferred to the Sycamore Branch of the Cincinnati Division of USPS in the last week of January 2006, where she became Supervisor of Customer Services. (Id. at ¶ 31). Since her transfer to the Sycamore Branch, there have been numerous openings for Acting Manager within the Cincinnati branch, for which Ms. Smith is both eligible and has applied. (Id. at ¶ 36). Ms. Smith continues to be

4

passed over in favor of less qualified, less experienced male applicants. (Id.).

During March or April of 2006, Mr. Dawson informed Ms. Smith that she would be given a written disciplinary write-up for failing to consistently perform cash drawer audits at the branches to which she was assigned. (Id. at ¶ 32). Ms. Smith contends that these allegations are altogether false. (Id. at ¶ 33). Ms. Smith also contends that similarly situated employees who assumed her financial oversight duties at Murray Station and who have engaged in the same conduct have no been disciplined by Mr. Dawson. (Id. at ¶ 34). Ms. Smith later complained to Jerry Seale, the president of the local union, The National Association of Postal Supervisors. (Id. at ¶ 35). Mr. Seale spoke with Mr. Dawson, who informed him that if Ms. Smith continued to complain, there would be more discipline imposed on her. (Id.). Mr. Seale relayed this information to Ms. Smith. (Id.).

Throughout the Spring and Summer of 2006, Ms. Smith repeatedly complained to USPS Human Resources Manager Ed Link and District Manager Lori Wigley about "the sex-specific unwelcomed verbal and physical advances made by Mr. Dawson, Mr. Dawson's later job-related retaliation against her after she refused his advances, and management's continued refusal to promote her to fill one of the Acting Manager positions for which she is qualified. (Id. at ¶ 37). Despite these complaints, Ms. Smith contends that no investigation was undertaken by USPS and no action was taken to confront or discipline Mr. Dawson. (Id.).

In the Fall of 2006, Ms. Smith initiated a formal complaint within the USPS, which culminated in a mediation session in late November of 2006. (Id. at ¶ 38). Present at the mediation were Ms. Smith and Chu Falling Star, Postmaster for the Cincinnati Division of USPS. (Id.). Ms. Smith made the same complaints to Ms. Falling Star that she had

5

previously made to Mr. Seale, Mr. Link, and Ms. Wigley. (Id.). Ms. Smith contends that Ms. Falling Star has also failed to follow up on the complaints, conduct a formal investigation, confront Mr. Dawson, or take any efforts to remedy the situation on Ms. Smith's behalf. (Id. at ¶ 39). Ms. Smith filed this complaint in June of 2008.

II.	Arguments of the Parties

USPS argues that the Court should dismiss Count 1 pursuant to Rule 12(b)(1) because Plaintiff failed to exhaust her administrative remedies because the sexually hostile work environment claim was not contained in the original EEOC charge. According to Defendant, the fleeting mention of sexual harassment in the EEOC charge is not enough to put Defendant on notice of other potential claims under Title VII. With regard to Count 3, Defendant contends that this Court should dismiss pursuant to Rule 12(b)(6) or in the alternative find in favor of Defendant on conversion to Rule 56 motion for summary judgment because Plaintiff fails to establish a prima facie case of retaliation and that her complaint does not allege sufficient facts that tend to show a retaliation violation under Title VII.

Plaintiff Ms. Smith argues that the court should not dismiss Count 1 of the Complaint because the sexually hostile work environment could and does reasonably grow out of the claim of sex discrimination contained in the original EEOC charge. As to Count 3, Plaintiff contends that Defendant's Motion to Dismiss should not be granted because she is not required to make out a prima facie case in order to survive, but rather need only comply with the pleading requirements of Fed. Rule Civ. P 8(a).

III.	Legal Analysis

Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the

plaintiff has the burden of proving jurisdiction in order to survive the motion. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Defendant USPS moved for dismissal under both Rules 12(b)(1) and (6). This Court is required to consider the 12(b)(1) motion first because "whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. *Bell v. Hood*, 327 U.S. 678, 682 (1946).

**I.  Plaintiff Exhausted Administrative Remedies By Alleging Sufficient Facts In The Original EEOC Complaint To Satisfy The "Expected Scope Of Investigation Test."**

Defendant USPS's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) arises from its contention that Plaintiff Smith has failed to exhaust the available administrative remedies with regard to Count 1 of the Complaint because the sexually hostile work environment claim was not explicitly raised in the original EEOC complaint.

It is axiomatic that a federal employee who brings charges under Title VII must first exhaust the available administrative remedies. *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991); *Hall v. United States Postal Service*, 857 F.2d 1073, 1078 (6th Cir. 1988). The Sixth Circuit has routinely stated that the purpose of this requirement is "to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures to attempt to avoid litigation." *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998); *EEOC v. Bailey*, 563 F.2d 439, 447 (6th Cir. 1977); *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). To that end, it is well settled that the federal courts will not have subject matter

7

jurisdiction over Title VII claims "*unless* the claimant explicitly files the claim in an EEOC charge *or the claim can be reasonably expected to grow out of the EEOC charge*." emphasis added, *Strouss v. Mich. Dep't of Corr's*, 250 F.3d 336, 342 (6th Cir. 2001). The general rule in the Sixth Circuit is that "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002) (quoting *Bailey*, 563 F.2d at 446). This rule has come to be known as the "expected scope of investigation test." *Weigel*, 302 F.3d at 380. Finally, under the "expected scope of investigation test," the 6th Circuit has recognized that "where facts related with respect to the charged claim would prompt the EEOC to investigate a different uncharged claim, the plaintiff is not precluded from bringing suit on that claim. *Id*. quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria,* 157 F. 3d 460, 463 (6th Cir. 1998).

Defendants USPS rely on the Sixth Circuit's decision in *Ang v. Procter & Gamble Co.*, in which an employee alleged an EEOC violation for termination based on national origin. 932 F.2d 540 (6th Cir. 1991). The court in *Ang* held that the plaintiff's retaliation claim was outside the scope of the EEOC charge and therefore could not pass the "expected scope of investigation test." Unlike the case at bar, the facts alleged in *Ang* dealt solely with the national origin claim and did not even infer a claim of retaliation.

More recently, the Sixth Circuit had cause to visit this issue again in *Weigel v. Baptist Hospital of Tennessee*, where it held that the facts alleged in the EEOC charge were sufficient to pass the "expected scope of investigation test." *Weigel*, 302 F.3d at 381. Similar to the case at bar, the plaintiff in *Weigel* included facts relating to both the adverse

8

employment actions and the discrimination claim. The court held that it was "logical that any investigation" arising from Weigel's EEOC charge would explore the related claim of retaliation. *Id.*

In the present case, the facts alleged in Plaintiff Smith's EEOC charge are as follows:

> "I have been repeatedly passed over for promotions to position of Acting Manager notwithstanding recommendations by past and current Managers and Area Managers. Positions have been given to males with decidedly inferior qualifications, performance and experience. Refusal to give me these promotions based in part on my ongoing complaints of sex discrimination and also *pervasive and severe sexual harassment by former Manager*." (emphasis added).

This statement is enough to satisfy the "expected scope of investigation test" because the sexually hostile work environment claim is easily deduced from the facts as alleged in the original EEOC charge. "Pervasive and severe harassment" is more than just sexual harassment or an annoying work environment resulting from personality differences. It is sufficient to infer a sexually hostile work environment claim. These facts not only put Defendant USPS on notice Smith's the discrimination claim, but the adverse employment actions against Ms. Smith coupled with the "pervasive and severe *sexual* harassment" create a strong inference in favor of a sexually hostile work environment claim. A reasonable investigation of the charges contained in the EEOC complaint would have alerted the EEOC and the Defendant to the possibility of a sexually hostile work environment claim. Therefore, Ms. Smith has alleged sufficient facts in her EEOC charge to contemplate the sexually hostile work environment claim contained in Count 1 of the judicial Complaint, thereby exhausting her administrative remedies.

**II. The Court Is Not Required To Convert the 12(b)(6) Motion To Dismiss Into A Rule 56 Motion For Summary Judgment.**

Under Fed. R. Civ. P. 12(b)(6), if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56. However, documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. Fed. R. Civ. P. 10(c). In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). Furthermore, a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment. *Lynch v. Leis*, 382 F.3d 642, 648 (6th Cir. 2004); *Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th Cir. 2001). In keeping with the prevailing view that "procedural technicalities should not be used to prevent Title VII claims from being decided on the merits," *Revis v. Slocomb Indus. Inc.*, 814 F. Supp. 1209, 1215 (D.Del. 1993), the Second, Third, Seventh, and Ninth Circuits have expanded the general rule in cases of employment discrimination claims based on race, sex, and national origin.[1] Specifically, these cases allow a court to go beyond the complaint and look "to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to

---

[1] *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Pension Benefit Guaranty Corp. v. White*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir. 1994); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

a plaintiff's claim which are attached to a defendant's motion."*Arizmendi v. Lawson*, 914 F. Supp. 1157, 1161 (E.D.Pa. 1996) (citing *Henson*, 29 F.3d at 284).

Based on the foregoing analysis, it appears that Defendant's 12(b)(6) motion does not have to be converted into a Rule 56 motion for summary judgment. The documents presented, which the Court will consider in determining the outcome of the 12(b)(6) motion are referenced repeatedly in the Complaint, and were also attached to Defendant's Motion. Furthermore, the EEOC complaint and interrogatories are the records of an administrative body, and therefore may be properly considered without converting the motion.

### III. Plaintiff's Complaint States A Claim Upon Which Relief Can Be Granted.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will only be successful if a plaintiff's complaint fails to state a claim upon which relief can be granted. All complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The standards for considering a 12(b)(6) motion to dismiss are well settled. The court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In fact, *Swierkiewicz* specifically and unanimously held that "an employment discrimination complaint need not include such facts [to make out a prima facie case] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" consistent with 8(a)(2). *Id.* at 508. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,

*Bell Atl. Corp. v. Twowbly*, 550 U.S. 544, 555 (2007) citing *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his or her "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Ibid*. citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Factual allegations must be enough to raise a right to relief above the speculative level. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004). The pleading must contain something more than a statement of facts that merely creates a suspicion of a "legally cognizable right of action" on the assumption that all the allegations in the complaint are true. *Swierkiewicz*, 534 U.S. at 508. Even though the Sixth Circuit has yet to rule on this issue, the trend in Title VII retaliation cases since *Swierkiewizc* is to require the plaintiff to "plead facts that would tend to show" the elements of a violation, including that plaintiff suffered an adverse employment decision after engaging in a protected activity and that there is a causal link between the two. *Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007). Under 42 U.S.C. § 2000e-3, protected activities include making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing with regard to a violation of Title VII. A well-pleaded complaint may proceed even if it appears that a recovery is "very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

  Taking the facts as alleged in Ms. Smiths Complaint to be true, there is little doubt that she has stated a claim upon which relief can be granted. Counts 1 and 3 do more than just state the elements of a violation. Both counts are replete with specific references

to the facts contained in the Complaint which support the presence of each element required to find a Title VII violation. Specifically, Count 1, which alleges a sexually hostile work environment, references her Manager's initial unwelcomed sexual advances and goes on to chronicle his repeated attempts to get her attention and the negative work environment she experienced as a result of spurning his advances. (Compl. ¶¶ 12- 25, 28-9, 40-42).

Similarly, Count 3, which alleges a retaliation violation, references the specific conduct of Defendant USPS in refusing to promote her after she began to complain about her Manager's behavior. (Id. ¶¶ 36-39, 50-52). Furthermore, the Complaint shows that Ms. Smith began to make official complaints in early 2006 regarding the treatment she was suffering at the hands of her manager. Specifically, Ms. Smith complained repeatedly to Defendant USPS and to the president of her local union regarding the treatment. (Id. ¶¶ 35-37). These complaints are enough to satisfy the pleading requirements in an employment discrimination case because it "tends to show" that she participated in a protected activity known to the defendant, that the defendant took adverse employment action against her, and that there is a causal connection between the two. The likelihood of recovery is more than a mere "remote" possibility. Ms. Smith has alleged both violations of Title VII and sufficient facts that, when viewed in the light most favorable to the plaintiff, support a claim upon which relief may be granted.

IV. Conclusion

Therefore, for the reasons set forth above, Defendant's Motion To Dismiss pursuant to Fed. R. Civ. P 12(b)(6) is hereby DENIED.

**IT IS SO ORDERED**.

*s/Michael R. Barrett*
Michael R. Barrett
United States District Judge